Argued and submitted April 5, Tillamook High School, Tillamook, affirmed
August 2, 2017, petition for review allowed February 15, 2018 (362 Or 508)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VICTOR UROZA-ZUNIGA,
*Defendant-Appellant.*

Washington County Circuit Court
C141815CR; A159939

402 P3d 772

Anna E. Melichar, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General.

Maja K. Haium and Sean O'Day filed the brief *amicus curiae* for City of Beaverton and League of Oregon Cities.

Before Armstrong, Presiding Judge, and Shorr, Judge, and Wilson, Senior Judge.

### WILSON, S. J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. He raises a single assignment of error on appeal, arguing that the trial court erred when it denied his motion to suppress evidence that police officers obtained following defendant's arrest for violating a Beaverton city ordinance that prohibits drinking alcohol in a "public place," as defined in Beaverton City Code (BCC) 5.02.083. Defendant asserts that his arrest, and the subsequent inventory of his wallet, was unlawful because state law—specifically ORS 430.402—preempts BCC 5.02.083. Therefore, according to defendant, the Oregon Constitution requires suppression of any evidence obtained as a result of the arrest. In the alternative, defendant argues that the city may not establish a criminal penalty for a violation of that ordinance because BCC 5.02.083 imposes a greater punishment than the state imposes for substantially similar conduct under Oregon's "open container" law, ORS 811.170. In response, the state contends that ORS 430.402 specifically permits the type of ordinance that the city adopted. Further, the state argues that ORS 811.170 and BCC 5.02.083 are different in specifics and in essence. We agree with the state and, accordingly, affirm.

### FACTS

We state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports. *See State v. Suppah*, 358 Or 565, 567 n 1, 369 P3d 1108 (2016) (applying that standard in reviewing denial of suppression motion). On August 6, 2014, Beaverton police officer Coplin responded to a Plaid Pantry store to investigate a report of people drinking in the parking lot. Upon arriving, Coplin saw three men standing around a car and a van drinking beer. As he approached the men, Coplin saw defendant place a bottle of beer inside the van. A second officer arrived as backup, and Coplin received consent from the men to search the vehicles and found four open beer bottles. Coplin placed all three men under arrest for violating BCC 5.02.083(A), which prohibits consumption of alcohol in public places, and states, in relevant part,

"No person shall consume alcoholic liquor or possess an open container of an alcoholic beverage while in or upon any public place, unless authorized by the [Oregon Liquor Control] Commission or by subsection B of this section."

An inventory of defendant's wallet at the Beaverton police station revealed methamphetamine.

The state charged defendant by information with unlawful possession of methamphetamine, ORS 475.894. Defendant filed a pretrial motion to suppress the evidence, pursuant to Article I, section 9, of the Oregon Constitution, on the grounds that his arrest was unlawful and that the evidence derived from his illegal seizure must be suppressed.[1] In his motion, defendant argued that BCC 5.02.083, which provided probable cause for his arrest, "unconstitutionally conflicts with a state law" namely ORS 430.402. That statute provides, in relevant part,

"(1) A political subdivision in this state shall not adopt or enforce any local law or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind:

"* * * * *

"(b) Public drinking, except as to places where any consumption of alcoholic beverages is generally prohibited."

In response to defendant's motion, the court stated that BCC 5.02.083 "does not violate ORS 430.402" because the code falls squarely within the exception expressly stated in subsection (1)(b). In other words, the court concluded that the "Beaverton City Code can do exactly what it did." As a result, the trial court denied the motion to suppress, and defendant waived his right to a jury trial. The case was tried to the court on stipulated facts. Ultimately, the court found defendant guilty and sentenced him to 18 months of probation. This appeal followed.

## STANDARD OF REVIEW

On appeal, we are bound by the trial court's findings of historical fact if constitutionally sufficient evidence in the

---

[1] Article I, section 9, guarantees that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

record supports those findings; our function, on review, is to decide whether the trial court applied legal principles correctly to those facts. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

## ANALYSIS

The first question presented by this case is whether BCC 5.02.083 conflicts with ORS 430.402(1)(b) and is, therefore, unconstitutional as preempted by state law. Under Article XI, section 2, of the Oregon Constitution, Oregon's municipalities may not enact ordinances that "conflict" with state laws.[2] *City of Portland v. Jackson*, 316 Or 143, 146, 850 P2d 1093 (1993). "An ordinance is said to 'conflict' with a state statute if the ordinance either prohibits conduct that the statute permits, or permits conduct that the statute prohibits." *State v. Krueger*, 208 Or App 166, 169, 144 P3d 1007 (2006). Although statutes are not typically written in terms of permitted conduct (*i.e.*, statutes are typically written in terms of prohibited conduct), we have noted that when the state legislature expressly permits specified conduct, by implication local governments may not prohibit that conduct, and a conflict resulting in preemption can exist. *Jackson*, 316 Or at 147.

*Jackson* laid out the analysis used to identify such a conflict. We "first must examine the ordinance and statutes that the parties claim are in conflict." *Id.* at 151. Second, "we determine what conduct the ordinance prohibits." *Id.* Third, "we look to see whether the applicable statute * * * *permit[s]* that conduct[.]" *Id.* (emphasis in original). Finally, "[i]f the ordinance prohibits conduct that the statute permits, the laws are in conflict and the ordinance is displaced under Article XI, section 2." *Id.*

We again quote the ordinance and statute at issue. Defendant was charged with public drinking under BCC 5.02.083, which provides, in relevant part,

---

[2] Article XI, section 2, provides, in part,

"The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, *subject to the Constitution and criminal laws of the State of Oregon* * * *."

(Emphasis added.)

"No person shall consume alcoholic liquor or possess an open container of an alcoholic beverage while in or upon any public place, unless authorized by the [Oregon Liquor Control] Commission or by [a written permit issued by the Tualatin Hills Park and Recreation District for use in a park]."

The ordinance goes on to define "public place" as

"[a] place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence and highways, streets, schools, places of amusement, parks, playgrounds, and premises used in connection with public passenger transportation."

BCC 5.02.010. Defendant claims that BCC 5.02.083 is in conflict with ORS 430.402, which provides, in part,

"(1)   A political subdivision in this state shall not adopt or enforce any local law or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind:

"* * * * *

"(b)   Public drinking, except as to places where any consumption of alcoholic beverages is generally prohibited."

To summarize, the statute prohibits political subdivisions from making "[p]ublic drinking" an "offense" subject to sanctions and penalties. However, it carves out an exception for the creation and enforcement of local laws or regulations making public drinking an offense for "places where any consumption of alcoholic beverages is *generally prohibited*." *Id.* (emphasis added). And, the ordinance generally prohibits consumption of "alcoholic liquor or the possession of an open container of an alcoholic beverage while in or upon any public place[,]" as defined in BCC 5.02.010.

Our next inquiry is whether the Oregon legislature intended to "permit" conduct that the ordinance proscribes—consumption of any alcohol in a "public place." Defendant argues that the legislature *expressly permits* drinking in public and, while it allows only *limited* regulation of that conduct by political subdivisions, the ordinance

exceeds the scope of local regulation permitted by the statute. Defendant acknowledges that "the precise scope of the exception [in ORS 430.402(1)(b)] is not clear from the text or context * * *." He contends, however, that the exception must be narrowly construed and, to prevent the exception from swallowing the rule, "places where any consumption of alcoholic beverages is generally prohibited" cannot be as broad as "any public place." Defendant argues that both the text and context of ORS 430.402(1)(b) lead to the conclusion that the statute limits cities to adopting and enforcing public drinking ordinances only as to "spaces, buildings or localities used for special purposes where all consumption of alcoholic beverages is, for the most part, forbidden by authority or command." We find no support for defendant's argument in either the text, context, or legislative history of the statute. *See State v. Althouse*, 359 Or 668, 672, 375 P3d 475 (2016) (setting out the interpretive methodology for statutory interpretation). Indeed, defendant's interpretation would ask us to write into the statute words that the legislature did not put there.

On its face, the text of ORS 430.402(1)(b) both bars municipalities from penalizing public drinking and carves out a broad exception for "places where *any* consumption of alcoholic beverage is generally prohibited." (Emphasis added.) Stated another way, the text of the statute suggests that a municipality may ban the consumption of alcohol in any place it designates so long as the ban is a general prohibition on public drinking (*i.e.*, rather than regulating what kind or volume of alcohol may be consumed). BCC 5.02.083 does just that—it generally prohibits the consumption of all alcohol in public areas—and, therefore, it falls squarely within the exception carved out in ORS 430.402(1)(b).

Further, the context and legislative history of ORS 430.402(1)(b) lend additional support to this conclusion. In 1971, the state legislature enacted a wide-ranging change in the state's approach to alcoholism and intoxication. Senate Bill (SB) 431 (1971). It established a policy that alcoholism is an illness that should be afforded treatment. *See* ORS 430.315 ("The Legislative Assembly finds alcoholism or drug dependence is an illness."). In addition to establishing a new state policy and repealing the state laws

criminalizing public intoxication, the legislature prohibited local governments from undermining its policy and objectives by treating public intoxication and associated conduct criminally.

As a part of the 1971 reforms, the legislature prohibited political subdivisions from making an offense (even one subject only to civil penalties) of several alcohol-related behaviors, including public intoxication, drunk and disorderly conduct, "vagrancy or other behavior that includes as one of its elements * * * drinking alcoholic beverages * * * in public, being an alcoholic * * *, or being found in specified places under the influence of alcohol * * *." ORS 430.402(1)(d). Likewise, it prohibited political subdivisions from making an offense of public drinking; however, that prohibition included an exception not found with regard to the other conduct listed—"except as to places where any consumption of alcoholic beverages is generally prohibited." ORS 430.402(1)(b). As the city notes and the defendant does not dispute, many cities already had bans on public drinking at the time of the 1971 reforms, including the City of Beaverton (which enacted its ban in 1955), and the bill was specifically amended by the House after passing the Senate to include the exception permitting continued regulation of public drinking by cities.

Further, it is not usual for statutes to give cities and counties the authority to adopt other alcohol-related ordinances. For example, ORS 471.506 sets forth the "local option" procedure by which cities and counties may prohibit the sale of one or more classes of alcoholic liquor altogether, and ORS 471.164 permits cities and counties to "adopt reasonable time, place and manner regulations of the nuisance aspects of establishments that offer entertainment or serve alcoholic beverages if the city or county makes specific findings that the establishment would cause adverse effects to occur."[3] Those statutes strongly suggest that the legislature intended to allow local governments to control some alcohol-related conduct more strictly than the state.

---

[3] ORS 471.164(2) further provides, "The authority granted to cities and counties by this section is in addition to, and not in lieu of, the authority granted to a city or county under its charter and the statutes and Constitution of this state."

In sum, nothing in the text, context, or history of ORS 430.402(1)(b), suggests to us that a political subdivision may prohibit public drinking only in places used for "special purposes," as defendant argues. Thus, the ordinance is not preempted by state law because ORS 430.402(1)(b) specifically provides for the type of ordinance in question.

In the alternative, defendant contends, even if we conclude that state law does not preempt BCC 5.02.083 in whole, the City of Beaverton may not establish a criminal penalty for violation of that ordinance. Defendant points out that a local government may not impose a greater punishment than the state imposes for substantially similar conduct that is prohibited by state law. The maximum penalty for drinking in public in violation of BCC 5.02.083 is a $2,500 fine and 365 days in jail, unless a "substantially similar" state statute provides for a lesser punishment. BCC 5.02.100. Defendant argues that drinking in public is substantially similar to drinking alcohol in a motor vehicle on a public highway, and that pursuant to ORS 811.170, drinking alcohol in a motor vehicle upon a public highway is punishable by a maximum fine of $1,000 and no imprisonment.[4] *See* ORS 153.018 ($1,000 is the maximum fine for a Class B violation); ORS 810.410(3)(a) (A police officer "[s]hall not arrest a person for a traffic violation."). Therefore, he concludes, the criminal penalty imposed by the public drinking ordinance is preempted. The state responds, in part, that the "Beaverton ordinance and the state 'open container' law (ORS 811.170) do not address 'the same conduct'" or "the same perceived problem" and, therefore, "comparing the penalties for each provision does not establish preemption."

---

[4] ORS 811.170 states, in part,

"(1) A person commits the offense of violation of the open container law in a motor vehicle if the person does any of the following:

"(a) Drinks any alcoholic liquor in a motor vehicle when the vehicle is upon a highway.

"(b) Possesses on one's person, while in a motor vehicle upon a highway, any bottle, can or other receptacle containing any alcoholic liquor, which has been opened, or a seal broken, or the contents of which have been partially removed.

"(c) Keeps in a motor vehicle when the vehicle is upon any highway, any bottle, can or other receptacle containing any alcoholic liquor, which has been opened, or a seal broken, or the contents of which have been partially removed. ***"

We agree with the state that the "open container" law does not preempt the public drinking ordinance. Generally, a city may not impose a greater punishment than a statute imposes for acts "similar in nature, although different in specifics" that both the statute and an ordinance prohibit. *State v. Tyler*, 168 Or App 600, 608, 7 P3d 624 (2000); *see also City of Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986). However, unlike the cases relied on by defendant—*Dollarhide* and *Tyler*—the statute and ordinance at issue do not regulate conduct that is "similar in nature." That is, BCC 5.02.083(A) concerns drinking in a public place within the city's jurisdiction. Conversely, ORS 811.170 requires two specific elements, elements not required to violate the ordinance, for conviction: (1) drinking in a motor vehicle (2) when the vehicle is upon the highway. Notably, drinking in a public place *outside* of a motor vehicle, even on a highway, is not the same behavior as that regulated by ORS 811.170. Indeed, the city acknowledges in its *amicus* brief that it could not cite a person who drinks alcohol inside a car that is on a highway while within the city's jurisdiction for a violation of BCC 5.02.083(1)—it must issue a citation pursuant to the Oregon Vehicle Code. Thus, the statute and ordinance regulate conduct that is different in specifics.

Further, the statute and the ordinance are also different in essence; they are aimed at different dangers. As the city points out, ORS 811.170 is part of the vehicle code and primarily concerned with the conduct of drivers and their passengers *on the public highways. See* ORS 801.020(1) (stating that the "purpose, object and intent of the [vehicle code] is to provide a comprehensive system for the regulation of all motor and other vehicles in this state"). In other words, the statute essentially regulates vehicles within the state whereas the ordinance is concerned with public drinking within city limits. What is more, the Oregon legislature intended that provisions of the vehicle code "shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein * * *." ORS 801.020(3). That insistence on uniformity is in contrast to the statutory permission for political subdivisions to regulate public drinking.

In sum, the ordinance and the state "open container" law (ORS 811.170) are different in specifics and in essence. Therefore, the city may impose greater punishment for violation of the ordinance and, as a result, comparing the penalties for each provision does not establish preemption.

## CONCLUSION

For the reasons explained above, the ordinance is valid. The trial court did not err.

Affirmed.