BALMER, J.
*974 **684 This case began with an arrest for public drinking, in violation of the Beaverton City Code. That arrest led to a search, a charge of drug possession, a denied motion to suppress, a trial to the court, a conviction for unlawful possession of methamphetamine, and an unsuccessful appeal. On review, defendant directs our focus to the beginning of this chain of events, the arrest. Beaverton prohibits drinking alcoholic beverages in any public place. Beaverton Code (BC) 5.02.083. Yet, ORS 430.402(1)(b), a state statute, prohibits Beaverton, along with all other local governments, from regulating or proscribing "[p]ublic drinking, except as to places where any consumption of alcoholic beverages is generally prohibited." Defendant argues that that statute preempts Beaverton's public drinking ordinance, making his arrest illegal and the fruits of that arrest subject to suppression. The state, along with amici curiae the City of Beaverton and the League of Oregon Cities, argues that it falls within ORS 430.402(1)(b) 's exception, and it is therefore not preempted. We hold that Beaverton's public drinking ordinance is not preempted by ORS 430.402(1)(b) and affirm defendant's conviction.
The pertinent facts are not in dispute. In August 2014, a Beaverton police officer responded to a call from a Plaid Pantry employee, reporting people drinking in the store's parking lot. When the officer arrived, he observed defendant and two other men drinking beer next to a van. The officer saw defendant put his beer into the van. Another officer arrived, and the two officers obtained consent to search the van. The search turned up four open beer bottles. Defendant was arrested for violating Beaverton's prohibition on public drinking.
One of the officers inventoried defendant's property. He discovered a small quantity of methamphetamine in defendant's wallet. Defendant was charged with unlawful possession of methamphetamine, ORS 475.894. He moved to suppress the evidence discovered during the inventory on the grounds that it was the product of an unlawful arrest. Defendant argued that the arrest was invalid because BC 5.02.083, the municipal ordinance under which **685 he had been arrested, is preempted by a state statute, ORS 430.402.[1]
BC 5.02.083 provides, "No person shall consume alcoholic liquor or possess an open container of an alcoholic beverage while in or upon any public place, unless authorized by the Commission or by subsection B of this section." In turn, "public place" is defined by BC 5.02.010 as
"[a] place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence and highways, streets, schools, places of amusement, parks, playgrounds, and premises used in connection with public *975 passenger transportation."[2]
ORS 430.402 provides,
"(1) A political subdivision in this state shall not adopt or enforce any local law or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind:
"(a) Public intoxication.
"(b) Public drinking, except as to places where any consumption of alcoholic beverages is generally prohibited.
"(c) Drunk and disorderly conduct.
"(d) Vagrancy or other behavior that includes as one of its elements either drinking alcoholic beverages or using cannabis or controlled substances in public, being an alcoholic or a drug-dependent person, or being found in specified places under the influence of alcohol, cannabis or controlled substances.
"(e) Using or being under the influence of cannabis or controlled substances."
(Emphasis added.)
**686 The trial court denied defendant's motion, reasoning that BC 5.02.083 is not preempted because it falls within the exception in ORS 430.402(1)(b). Defendant waived his right to a jury trial and was convicted by the court after a trial on stipulated facts.
Defendant appealed, assigning error to the denial of his motion to suppress and renewing the argument that he made in the trial court. The state argued that BC 5.02.083 had not been preempted.[3]
The Court of Appeals reasoned that
"[o]n its face, the text of ORS 430.402(1)(b) both bars municipalities from penalizing public drinking and carves out a broad exception for 'places where any consumption of alcoholic beverage is generally prohibited.' (Emphasis added.) Stated another way, the text of the statute suggests that a municipality may ban the consumption of alcohol in any place it designates so long as the ban is a general prohibition on public drinking (i.e ., rather than regulating what kind or volume of alcohol may be consumed). [BC] 5.02.083 does just that-it generally prohibits the consumption of all alcohol in public areas-and, therefore, it falls squarely within the exception carved out in ORS 430.402(1)(b)."
State v. Uroza-Zuniga , 287 Or. App. 214, 220, 402 P.3d 772 (2017). Determining that the context and legislative history supported that meaning, the Court of Appeals held that the ordinance was valid and affirmed defendant's conviction. Id . at 220-21, 224, 402 P.3d 772. We allowed review.
This case involves the intersection of state and local authority. The Oregon constitution provides that
"[t]he Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."
Or. Const., Art. XI, § 2. That provision, along with Article IV, section 1(5), of the Oregon Constitution (reserving initiative **687 powers over local legislation), gives Oregon municipalities their own, "home rule" authority "to regulate to the extent provided in their charters." Rogue Valley Sewer Services v. City of Phoenix , 357 Or. 437, 445, 353 P.3d 581 (2015). The City of Beaverton's charter, in turn, provides that
"The city shall have all powers which the constitutions, statutes, and common law of the United States and of this state expressly or impliedly grant or allow municipalities, as fully as though this charter specifically enumerated each of those powers."
Charter for the City of Beaverton, Chapter II, section 4. Under the powers granted by *976 that charter, the City of Beaverton enacted the ordinance at issue in this case.
But local authority is not absolute. We have recognized that
"a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state prevails over contrary policies preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form."
LaGrande/Astoria v. PERB , 281 Or. 137, 156, 576 P.2d 1204, adh'd to on recons. , 284 Or. 173, 586 P.2d 765 (1978). That is, subject to certain limitations not pertinent here, the state government is permitted to preempt local ordinances.
Several of our past preemption cases have articulated tests to determine when a local criminal ordinance conflicts with a state criminal law. City of Portland v. Dollarhide , 300 Or. 490, 714 P.2d 220 (1986) ; City of Portland v. Jackson , 316 Or. 143, 850 P.2d 1093 (1993) ; City of Portland v. Lodi , 308 Or. 468, 782 P.2d 415 (1989). This case, however, does not concern preemption by implication. ORS 430.402 expressly states which local ordinances it preempts, alongside categories of local ordinances that the legislature did not wish to preempt. See Jackson , 316 Or. at 147, 850 P.2d 1093 (noting that former ORS 430.325(1) (1993), renumbered as ORS 430.402(1) (2011), was an example of the legislature "occupy[ing] an entire field of legislation on a subject, and expressly preclud[ing] local legislation on the subject"). In this context, whether **688 ORS 430.402(1) is intended to interpret the Beaverton ordinance is solely a matter of statutory construction.
To resolve this case, we must therefore interpret ORS 430.402. We begin with the text. State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009). ORS 430.402 provides,
"(1) A political subdivision in this state shall not adopt or enforce any local law or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind:
"* * * * *
"(b) Public drinking, except as to places where any consumption of alcoholic beverages is generally prohibited."
Defendant argues that ORS 430.402(1)(b) is best read to establish a broad prohibition on local laws penalizing "public drinking." He reads the exception to permit ordinances prohibiting public drinking only if they include an additional element-that the conduct occurs in certain "places." But, defendant argues, that additional element cannot be identical to or coextensive with the concept of public drinking-that is, the "places where" drinking may be prohibited cannot include all public places. Otherwise, defendant argues, the exception would nullify the rule- ORS 430.402(1)(b) would allow the prohibition of all public drinking.
The state argues that, under ORS 430.402(1)(b), "local governments may regulate public drinking within their jurisdictions wherever they choose, as long as they ban any consumption of alcohol from those places." Similarly, amici argue that the ban on local laws against public drinking in ORS 430.402(1)(b) permits local governments to enact a general ban on drinking alcoholic beverages in any or all public places as long as those bans are without regard to the type of beverage or its alcohol content.
One clearly ambiguous word in ORS 430.402(1)(b) is the word "generally," which, can mean "with respect to all : UNIVERSALLY "; "in a reasonably inclusive manner : in disregard of specific instances and with regard to an overall picture"; or "on the whole : as a rule." Webster's Third New Int'l Dictionary , 945 (unabridged ed. 2002). The use of the word "any" to modify "consumption of alcoholic beverages"
**689 suggests that the legislature did not intend "generally" to mean "reasonably inclusive"-it would be somewhat contradictory to speak of a "reasonably inclusive" ban on "any" consumption of alcoholic beverages. Similarly, although ORS 430.402(1)(b) could be read to allow local bans on public drinking in the types of places where any consumption of alcoholic beverages is "as a rule"-that is, customarily-prohibited, that would be circular. Drinking *977 could be banned where drinking is usually banned.[4]
It makes the most textual sense to read "generally" to mean "universally"; then the phrase "places where any consumption of alcohol is generally prohibited" would refer to places where there is a ban "with respect to all" drinking. On that reading, ORS 430.402(1)(b) would allow a ban on drinking in a public place only if that ban was complete or comprehensive-that is, a ban that proscribes drinking of all alcoholic beverages at all times of day.[5]
Defendant, however, focuses not on the word "generally" but on the word "places," arguing that it suggests that a local government may prohibit public drinking in particular locations but may not prohibit it in all public "places." That argument finds no purchase. Nothing about the word "places" suggests a limit on the number of places where a local government might ban alcohol. To the extent that defendant's argument rests on the intuition that "everywhere" is a single "place," the legislature has informed us that "[t]he singular number may include the plural and the plural number, the singular." ORS 174.127(1). And if the argument is that "all public places" is not really a place at all, it is a least **690 composed of "places," in all of which drinking may be prohibited provided that the prohibition is general. Moreover, any limit along those lines would not be administrable in any principled manner- ORS 430.402(1)(b) supplies no standard for determining when drinking has been prohibited in too many places. As we read ORS 430.402(1)(b), a local ordinance may ban drinking in some public places or in all public places without being preempted. It is only when the ban on drinking in a given public place is partial or selective that ORS 430.402(1)(b) preempts local authority.
Defendant's other textual argument is that, so construed, the exception nullifies the rule. Beaverton, defendant argues, has enacted a ban on public drinking, exactly what ORS 430.402 prohibits. But that argument begs the question. As we read it, ORS 430.402(1)(b) does not prohibit all bans on public drinking, it requires that in any public place where drinking is banned, the ban must be general. ORS 430.402 (1)(b) may not include the prohibition for which defendant advocates, but it is not a nullity. Without ORS 430.402(1)(b), a municipality could enact a ban on public consumption of only some types of alcohol or a ban on public drinking that applied only at certain times of day. With it, such ordinances-prohibitions on public drinking that are not general bans on all public drinking-are expressly preempted.
We turn next to legislative history. The legislature enacted ORS 430.402 in 1971. Or. Laws 1971, ch. 622, § 3. It formed part of a comprehensive effort
"to end the longstanding practice of dealing with public drunkenness as a criminal offense * * * and to treat it instead as a health problem. A central aim of this legislative reform was to repeal penal laws against public intoxication and to redirect police responsibility toward taking intoxicated persons to their homes or other safe shelter rather than jailing the person in a police 'drunk tank.' "
State v. Okeke , 304 Or. 367, 370-71, 745 P.2d 418 (1987) (footnote omitted). As originally enacted, the first section of that law stated:
"The Legislative Assembly finds alcoholism is an illness. The alcoholic is a sick *978 person and should be afforded treatment for his illness."
**691 Or. Laws 1971, ch. 622, § 1.[6]
When first introduced, in the Senate, the text that became ORS 402.430 preempted local public drinking ordinances without exception:
"No county, municipality or other political subdivision of this state shall adopt any local law, ordinance, resolution or regulation rendering public intoxication, public drinking, drunk and disorderly conduct, or vagrancy or other behavior that includes as one of its elements either drinking in public or being a common drunkard or being found in enumerated places in an intoxicated condition, an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind. Nothing in this section contained shall affect any laws, ordinances, resolutions or regulations against drunken driving, driving under the influence of alcohol, or other similar offenses that involve the operation of motor vehicles."
Bill File, SB 431, Mar 17, 1971 (introduced bill).[7]
**692 The House rewrote that section, changing the formatting and adding several exceptions, including the one at issue in this case:
"(1) No political subdivision in this state shall adopt any local law, ordinance, resolution or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties or sanctions of any kind:
"(a) Public intoxication, except that the political subdivision may adopt a local law, ordinance, resolution or regulation identical to section 221, chapter ___, Oregon Laws 1971 (Enrolled Senate Bill 40).
"(b) Public drinking, except as to places where any consumption of alcoholic beverages is generally prohibited.
"(c) Drunk and disorderly conduct.
"(d) Vagrancy and other behavior that includes as one of its elements either drinking in public or being a common drunkard or being found in specified places in an intoxicated condition.
"(2) Nothing in subsection (1) of this section shall affect any local law, ordinance, resolution or regulation of any political subdivision in this state against drunken driving, driving under the influence of alcohol, or other similar offenses that involve the operation of motor vehicles."
Bill File, SB 431, Apr. 21, 1971, (-2 amendments). Little in the legislative record sheds light on what the legislature understood the added exception in paragraph (1)(b) to accomplish.
Defendant argues that in light of the purpose of SB 431-the decriminalization of alcoholism-the exception in ORS 430.402(1)(b) should be interpreted to allow only limited local regulation of public drinking. But that appeal to a general legislative purpose is unpersuasive. In many cases, as then-Professor *979 Linde observed, "the search for a goal beyond the enacted policy itself will be illusory because a policy often results from the accommodation of competing and mutually inconsistent values * * *." Hans A. Linde, Due Process of **693 Lawmaking , 55 Neb. L. Rev. 197, 212 (1976). Many bills contain both provisions that advance their principal purposes and provisions that may limit their pursuit of those goals to protect other interests. That is particularly evident here. As introduced, SB 431 included a total ban on local public drinking ordinances. But during the legislative process the Legislative Assembly added an exception to that prohibition. Here, the Legislative Assembly's general purpose to decriminalize alcoholism sheds little light on the breadth of the exception that it drafted, because that exception was itself a move away from complete preemption. In the absence of more specific legislative history, the question of how the competing interests-decriminalization and local control-were reconciled is best resolved by the text that the legislature enacted.
In this case, there is no such specific legislative history. Both parties point to an exchange between Representatives Crothers and Peck. As Representative Crothers explained the exception to the ban on local public drinking ordinances in response to questions from Representative Peck, "You can't make public drinking an offense unless it is generally prohibited in that place." Tape Recording, House Committee on Health, Education, and Welfare, SB 431, May 7, 1971, Tape 2, Side 1 (statement of Rep Morris Crothers). As Representative Crothers further elaborated, "It's generally prohibited in parks and you can still prohibit drinking in parks under this wording. * * * You can just say by city ordinance we're not going to let you drink in certain places."Id .
The parties emphasize different portions of that exchange. Defendant points to Representative Crothers' use of "certain places" and the selection of parks as an example of a place where drinking can be banned-that, he argues, favors his view that ORS 430.402(1)(b) allows local governments to ban drinking in some places but not every public place. The state, by contrast, emphasizes that, as Representative Crothers explained the law, local governments remained in control of public drinking ordinances and Representative Crothers' first explanation, that "[y]ou can't make public drinking an offense unless it is generally prohibited in that place." Tape Recording, House Committee on Health, Education, and Welfare, SB 431, May 7, 1971, Tape 2, Side 1.
**694 Aside from observing that Representative Crothers' explanation is consistent with our interpretation of the text, we decline to read much into it. Representative Crothers' first rephrasing of the statute, "you can't make public drinking an offense unless it is generally prohibited in that place," retains, rather than pins down, the statute's ambiguous use of the word "generally," and thus does little to confirm or to refute our view of its meaning. Representative Crothers' choice of the park as an example of where drinking can be banned also tells us little-there is no indication that his example was intended to be exhaustive. And Representative Crothers' single, passing use of "certain places," rather than simply "places," to describe where drinking can be banned cannot make up for the absence of "certain places" in the text of the statute.
In short, the purpose, history, and legislative record of ORS 430.402(1)(b) shed little light on what types of laws it was intended to preempt. As far as we can tell, our reading of ORS 430.402(1)(b) is consistent with its purpose. ORS 430.402(1)(b) preempts selective bans on public drinking, of the sort that could be directed specifically at alcoholics-such as a regulation barring consumption of malt liquor in a certain public place, or a ban on public drinking only during hours when most of the public does not drink. The other local laws that ORS 430.402(1) preempts include bans on "public intoxication," ORS 430.402(1)(a), "drunk and disorderly conduct," ORS 430.402(1)(c), or "vagrancy or other behavior that includes as one of its elements * * * being an alcoholic," ORS 430.402(1)(d) -laws that would turn alcoholism into a status offense or would be applied *980 primarily to alcoholics. It seems reasonable that the legislature would be most concerned with local public drinking laws that similarly targeted alcoholics.[8] As we interpret ORS 430.402 (1)(b), it permits complete prohibitions of public drinking, but that does not seem particularly anomalous. It is consistent with a legislative decision to allow local governments to retain regulatory authority over public drinking, while **695 also ensuring that those bans were not crafted in ways that targeted alcoholics. In any event, nothing in the legislative history persuades us to depart from our interpretation of the text.
The application to this case is straightforward. Beaverton's public drinking ordinance provides that
"[n]o person shall consume alcoholic liquor or possess an open container of an alcoholic beverage while in or upon any public place, unless authorized by the Commission or by subsection B of this section."
BC 5.02.083(A). It is a general ban on drinking in public places-it applies to all types of alcoholic beverages consumed in those places at all times of day. Accordingly, Beaverton's ordinance was not preempted. It follows that defendant's arrest was valid and the trial court properly denied his motion to suppress.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Defendant also argued that BC 5.02.083 conflicted with, and was impliedly preempted by, ORS 811.170 (prohibiting open containers in cars on public highways). The trial court and the Court of Appeals rejected that argument and we did not allow review on that issue.

That definition is identical to the definition of "public place" in ORS 161.015(10).

The state also argued that the arrest was reasonable, regardless of whether the ordinance is preempted. Because we agree with the state that the ordinance is not preempted, we do not reach that question.

Moreover, it seems to be customary for Oregon municipalities to ban drinking in all types of public places, so the circularity of that interpretation would make ORS 430.402(1)(b) a nullity. See, e.g ., Albany Municipal Code 7.08.040; Astoria Code 5.370; Aurora Municipal Code 9.08.020; Baker City Code § 113.21; Bend Code 5.15.005; Coquille Code 9.08.050; Corvallis Municipal Code 5.03.040.010.06; Eugene Code 4.190(1); Grants Pass Municipal Code 5.68.010(A); Gresham Revised Code 7.10.120; Lebanon Municipal Code 12.12.020; Madras Ordinance 497, § 19; Redmond Code 5.170; Roseburg Municipal Code 7.02.030; Sheridan City Code 9.12.020; Springfield Municipal Code 5.256; Tigard Municipal Code 7.32.180; Toledo Municipal Code 9.04.090.

We do not mean to suggest that those are the only features a ban must have in order to qualify as general. Defendant does not argue that Beaverton's ordinance is insufficiently comprehensive, or that any feature of the ordinance, beyond its geographic scope, causes it to be preempted by ORS 430.402(1)(b).

Since 1971, the legislature has expanded that text to encompass drug dependency as well:
"The Legislative Assembly finds alcoholism or drug dependence is an illness. The alcoholic or drug-dependent person is ill and should be afforded treatment for that illness. To the greatest extent possible, the least costly settings for treatment, outpatient services and residential facilities shall be widely available and utilized except when contraindicated because of individual health care needs."
ORS 430.315.

That text was derived from the Uniform Alcoholism and Intoxication Treatment Act, although SB 431 omitted some of the exceptions contained therein:
"(a) No county, municipality, or other political subdivision may adopt or enforce a local law, ordinance, resolution, or rule having the force of law that includes drinking, being a common drunkard, or being found in an intoxicated condition as one of the elements of the offense giving rise to a criminal or civil penalty or sanction.
"(b) No county, municipality, or other political subdivision may interpret or apply any law of general application to circumvent the provision of subsection (a).
"(c) Nothing in this Act affects any law, ordinance, resolution, or rule against drunken driving, driving under the influence of alcohol, or other similar offense involving the operation of a vehicle, aircraft, boat, machinery, or other equipment, or regarding the sale, purchase, dispensing, possession, or use of alcoholic beverages at stated times and places or by a particular class of persons ."
Uniform Alcoholism and Intoxication Treatment Act, § 19 (1971) (emphasis added).

The uniform law upon which SB 431 was based demonstrated a similar concern with the possibility that a local government "may interpret or apply any law of general application to circumvent" its restrictions. Uniform Alcoholism and Intoxication Treatment Act, § 19(b) (1971).